Michael W. Malter (SBN 96522)
Julie H. Rome-Banks (SBN 142364)
BINDER & MALTER, LLP
2775 Park Avenue
Santa Clara, CA 95050
Tel: (408) 295-1700
Fax: (408) 295-1531
Email: Michael@bindermalter.com
Email: Julie@bindermalter.com

Attorneys for Debtor and Debtor-in-Possession,
Clement Support Services, Inc.

Jon G. Brooks (SBN 217930)
LAW OFFICES OF JON G. BROOKS
1900 The Alameda, Suite 520
San Jose, CA 95126
B: (408) 286-2766
Email: Jon@brooksattorney.com

Attorneys for Debtor and Debtor-in-Possession,
CSS Fabrication, Inc.

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

| | |
|---|---|
| In re:<br><br>CLEMENT SUPPORT SERVICES, INC.,<br>a California corporation,<br><br>                                  Debtor. | Case No.: 15-50794-MEH<br>Case No.: 15-50795-MEH<br><br>Chapter 11<br><br>Cases Jointly Administered |
| In re:<br><br>CSS FABRICATION, INC.,<br>a California corporation,<br><br>                                  Debtor. | Date:<br>Time:<br>Courtroom: 3020 |

**MOTION TO DISMISS CHAPTER 11 BANKRUPTCY CASES**

## Table of Contents

I. FACTUAL BACKGROUND ................................................................................................ 4

II. LEGAL ARGUMENT ..................................................................................................... 10

   A. THE DEBTORS MAY REQUEST THAT THEIR CHAPTER 11 BANKRUPTCY CASES BE DISMISSED. ............................................................................................. 10

   B. A CHAPTER 11 CASE MAY BE DISMISSED FOR CAUSE SHOWN. ....................... 10

   C. CAUSE EXISTS TO DISMISS THESE CHAPTER 11 CASES. ..................................... 12

   D. DISMISSAL IS IN THE BEST INTEREST OF CREDITORS. ....................................... 14

III. PRAYER ........................................................................................................................ 16

# TABLE OF AUTHORITIES

**Statutes**

11 U.S.C. §1107 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

11 U.S.C. §1109(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

11 U.S.C. §1112(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12

11 U.S.C. §1112(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

11 U.S.C. 1108 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

S.Rep. No. 989, 95th Cong., 2d Sess. 117 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**Cases**

In re Gonic Realty Trust (1st. Cir. 1990) 909 F.2d 624 . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

In re GPA Technical Consultants Inc. (Bkrtcy. S.D. Ohio 1989) 106 B.R. 139 . . . . . . . . . . . . . . . . . . . . . . . 13

In re Kimble (Bkrtcy. D. Mont. 1988) 96 B.R. 305 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

In re Mechanical Maintenance, Inc. (E.D. Pa. 1991) 128 B.R. 382 . . . . . . . . . . . . . . . . . . . 13

In re Sullivan (Bkrtcy. E.D.Pa. 1989) 108 B.R. 555 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

The Debtors, Clement Support Services, Inc. ("Clement") and CSS Fabrication, Inc. ("Fabrication", together with Clement the "Debtors") hereby request dismissal of these chapter 11 cases and respectfully represent:

1. <u>Notice</u>: Notice of the hearing on this motion has been provided to all creditors and parties in interest in both bankruptcy cases. Pursuant to the Order Limiting Notice (docket #169), which provides that Warranty Claimants shall receive no further notice unless they file a proof of claim or request special notice, no Warranty Claimants were served with notice of the hearing on this Motion because no Warranty Claimants have filed proofs of claim or requests for special notice in these cases.

I. FACTUAL BACKGROUND

2. On March 10, 2015 ("Petition Date"), Clement and Fabrication each commenced a Chapter 11 bankruptcy case in the United States Bankruptcy Court for the Northern District of California ("Bankruptcy Court"), case numbers 15-50794 and 15-50795 (the "Bankruptcy Cases"), which Bankruptcy Cases are being jointly administered. The Debtors are operating as debtors-in-possession under 11 U.S.C. §§1107 and 1108.

3. An Official Committee of Unsecured Creditors (the "Committee") was appointed in the Clement bankruptcy case on April 6, 2015. No committee has been appointed in the Fabrication bankruptcy case.

4. AvidBank is the Debtors' secured lender, and asserts a security interest in all business personal property of the Debtors, including the Debtors' accounts receivable.

5. The Bankruptcy Cases were filed with the express intention of obtaining Bankruptcy Court approval of a sale of assets. The Debtors have operated at losses every month since the Petition Date.

6. As of On June 1, 2015, the Bankruptcy Court entered its Order granting the

Debtors' Motion to Approve Sale of Assets Free and Clear of Liens and Interests and related relief pursuant to which the Court approved ACME Seismic Acquisition, LLC , a subsidiary of ACME Construction Supply Co, Inc., (collectively "ACME") as the purchaser of a substantial portion of Debtors' assets including inventory, intellectual property, goodwill, and business records (the "Asset Sale"). The Asset Sale closed on June 4, 2015 and the Debtors ceased regular business operations at that time. As part of the consideration for the Asset Sale, ACME Construction Supply Co, Inc. provided AvidBank with a Guaranty of the indebtedness owed by the Debtors to AvidBank.

7. In connection with the Asset Sale, the Court established a bar date of July 31, 2015 (the "Administrative Claims Bar Date") for creditors holding administrative claims that arose between March 10, 2015 and June 4, 2015. Creditors were served with notice of the Administrative Claims Bar Date (docket #149) on June 16, 2015 as reflected in the Certificate of Service filed by appointed noticing agent Epiq Bankruptcy Solutions on May 14, 2015 as docket #151. on A limited number of creditors filed timely administrative claims by the Administrative Claims Bar Date as described below.

8. The sale proceeds were insufficient to satisfy the obligations of AvidBank. On June 25, 2015, after the Asset Sale had closed, AvidBank filed its Motion for Limited Relief from Automatic Stay ("Stay Relief Motion") seeking to apply proceeds of the Debtors' accounts receivable to the outstanding obligations of the Debtors to AvidBank. The Debtors and the Committee opposed the Stay Relief Motion. AvidBank received partial relief from stay while the Debtors brought a motion to surcharge AvidBank's collateral pursuant to 11 U.S.C. §506(c) (the "Surcharge Motion"). Ultimately, the Debtors and Committee reached a global settlement of the issued raised in the Relief From Stay Motion and the Surcharge Motion with AvidBank and Acme. That settlement was approved by Court order entered on October 19, 2015 (the

"Settlement").

9. The Settlement provides in pertinent part that because the bankruptcy estates of Debtors are administratively insolvent, AvidBank and Acme agreed to provide certain limited carve-out funds to the Debtors to allow required tax payments, U.S. Trustee fee payments and professional fees to be paid up to specific limitations. The amounts that AvidBank and Acme agreed to fund are not sufficient to pay all professional fees[1] and there is a significant shortfall in the amount of funds available to pay appointed professionals in these cases, as well as insufficient funds to pay creditors who filed administrative claims by the Administrative Claims Bar Date. The Settlement also resolved potential claims that the bankruptcy estates held against Anthony "Tony" Clement and Michelle Clement, principals of the Debtors (the "Clement Principals") including resolution of a shareholder note. The Clement Principals are the owners of 100% of the membership interests of Vandell, LLC, a California limited liability company ("Vandell"), which owns the improved real property located at 480 Vandell Way, Campbell, California, 95008 (the "Campbell Property"). Clement had operated at the Vandell Property prior to the sale of assets. Vandell has been actively marketing the Campbell Property for sale since early 2015.

10. As provided in the Settlement, in exchange for releases granted to the Clement Principals by the bankruptcy estates, Vandell has provided a fifth deed of trust on the Campbell Property for the benefit of administrative creditors consisting of ACME's allowed administrative claim of $498,527.14 in the Clement bankruptcy case and allowed administrative claim of $311,610.01 in the Fabrication bankruptcy case, for a total administrative claim against the Debtors in the amount of $810,137.05 (the "ACME Administrative Claim"), together with other timely filed administrative claims. Edward Webb of Burr Pilger Mayer has been appointed by

---

[1] As part of the Settlement, the professionals have agreed to write-off the balance of their fees not covered by the carve-out funds.

ACME as the collateral agent (the "Fifth DOT Agent") on behalf of the beneficiaries of the Fifth Deed of Trust. The Fifth DOT Agent is also required to release the lien of the Fifth Deed of Trust immediately upon any sale of the Campbell Property that exceeds a certain purchase price agreed upon by the parties to the Settlement, which amount has been filed under seal with the Bankruptcy Court and is subject to a confidentiality agreement of the parties to the Settlement Agreement. Upon recording of the Fifth Deed of Trust, the Clement Note became a limited recourse obligation of Tony Clement, with the note payable solely from note holder's exercise of its rights in the collateral securing such note, including the receipt of any proceeds from the sale of the Campbell Property, and Tony Clement no longer has any personal liability for payment of the Clement Note or the other obligations under the Fifth Deed of Trust.

11. Upon the sale of the Campbell Property, including any foreclosure sale that extinguishes the lien of the Fifth Deed of Trust in the Campbell Property, the proceeds from such sale available to the beneficiaries of the Fifth Deed of Trust shall be distributed in the following priority: (1) first, to pay the Fifth DOT's Agent's fees and costs; and, (2) second, pro rata to the holders of the ACME Administrative Claim and the Other Administrative Claims up to the amounts necessary to pay all such claims in full.

12. The Settlement further provides that the general unsecured claims against the Debtors shall be secured by a sixth position deed of trust on the Campbell Property (the "Sixth Deed of Trust"). The Committee and Debtors also selected Edward Webb of Burr Pilger Mayer to act as the collateral agent (the "Sixth DOT Agent") on behalf of the beneficiaries of the Sixth Deed of Trust. The Sixth DOT Agent is required to release the lien of the Sixth Deed of Trust immediately upon any sale of the Campbell Property that exceeds the purchase price agreed upon by the parties to the Settlement, which amount has been filed under seal with the Bankruptcy Court and is subject to a confidentiality agreement of the parties to the Settlement Agreement.

13. Upon the sale of the Campbell Property, including any foreclosure sale that extinguishes the lien of the Sixth Deed of Trust in the Campbell Property, the proceeds from such sale available to the beneficiaries of the Sixth Deed of Trust shall be distributed in the following priority: (1) first, to pay the Sixth DOT's Agent's fees and costs; and, (2) second, pro rata to the holders of the general unsecured claims up to the amounts necessary to pay all such claims in full.

14. As stated above, the Fifth and Sixth Deeds of Trust have now been recorded pursuant to the terms of the Settlement.

15. Presently, the funds in the Bankruptcy Estates as of October 31, 2015 consist of the following:

<u>Clement Support Services, Inc.</u>
Operations Account: $0
First Republic Account: $3858
Lockbox Account (subject to AvidBank's lien): $851
Unsecured Creditor's Reserve: $332,683
(consists of $252,347 for priority and unsecured creditors and $80,336 carve-out for professionals)
Professional Carve-out Account $307,068

<u>CSS Fabrication, Inc.</u>
Operations Account: $0
Professional Carve-out account $0
Lockbox Account (subject to AvidBank's lien): $0

16. AvidBank is currently owed a balance of $2,236,483 on its secured loans as of November 24, 2015, not including legal fees. The remaining accounts receivable of the Debtors, which are older than 91 days, after allowance for doubtful accounts, total the sum of $307,564 as to Clement and $723,079 as to Fabrication. No other assets remain available to satisfy the claims of AvidBank from the Debtors. Pursuant to an order granting relief from the automatic stay entered on October 13, 2015, AvidBank is retaining the proceeds of all accounts receivable that are collected and applying those proceeds toward its outstanding secured loans.

17. The administrative claims which were timely filed in the Clement Bankruptcy Case before the Administrative Claims Bar Date and which will be paid in full pursuant to the approved Settlement consist of the following:

    Epiq Bankruptcy Solutions (Docket #181)    $20,769.48

    United Parcel Service (Claim #40)    $281.47

18. In addition, pursuant to the Settlement, Avidbank agreed and has paid to the Debtors in settlement the sum of $168,559.86 to permit the payment of all pre- and post-petition sales taxes to the State Board of Equalization in an amount not to exceed $168,559.86. These funds are currently on deposit in the Unsecured Creditors Reserve account identified above, with the remaining funds in that account less $80,336 for professionals, carved out for unsecured creditors of Clement.

19. The professionals appointed by the Bankruptcy Court have incurred fees and costs far beyond the pre-petition retainers (if any) that they have received. As contemplated by the final cash collateral order in these cases and pursuant to the orders approving the sale and the Settlement approved by the Court, funds in the total amount of $387,404 have been paid by AvidBank and are designated for payment to appointed professionals (the "Professional Fee Fund"). The appointed professionals have agreed to accept such payments on a pro-rata basis and agreed to write off all fees not covered by the Professional Fee Fund. The total amount of professional fees and costs are estimated as follows. Each professional firm will file a declaration regarding the amount of their respective fees and costs prior to the hearing on this Motion:

    Binder & Malter, LLP, bankruptcy counsel to Clement[2]:    $425,000
    Jon G. Brooks, bankruptcy counsel to Fabrication[3]:    $25,916

---

[2] Binder & Malter LLP received a retainer in the amount of $70,336.74 for the Clement Bankruptcy Case. The amount of post-petition fees noted above includes an additional $5,000 to cover the fees and costs incurred to prepare, serve and prosecute this Motion.

|  |  |
|---|---|
| Burr Pilger Mayer, accountants to Clement: | $260,160 |
| Sheppard Mullin Richter & Hampton LLP, Committee Counsel in the Clement Case: | $89,691 |
| Total Estimated Professional Fees and Costs | $800,767 |

20. Shortly after dismissal, BPM will disburse the $150,000 to all claimants in Clement who have either scheduled undisputed claims or have filed timely unsecured claims on a pro rata basis. BPM will be compensated for its costs associated with making such distributions from the proceeds.

## II. LEGAL ARGUMENT

### A. THE DEBTORS MAY REQUEST THAT THEIR CHAPTER 11 BANKRUPTCY CASES BE DISMISSED.

11 U.S.C. §1112(b) Section 1112(b) provides that on request of a party in interest, the Court may dismiss a chapter 11 case for "cause" if to do so would be in the best interest of creditors. Although motions to dismiss are more commonly brought by creditors or the United States Trustee, a debtor is considered to be a "party in interest" in its own bankruptcy case and therefore has standing to bring this Motion. 11 U.S.C. §1109(b) provides that a party in interest includes:

> ...the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

11 U.S.C. §1109(b). Accordingly, the Debtors are considered parties in interest and therefore have standing to bring this Motion to dismiss their bankruptcy cases.

### B. A CHAPTER 11 CASE MAY BE DISMISSED FOR CAUSE SHOWN.

---

[3] Jon G. Brooks received a retainer of $10,000 for the Fabrication Bankruptcy Case.

11 U.S.C. §1112(b) Section 1112(b) further provides ten (10) non-exclusive examples of what may constitute "cause" for dismissal in a particular case. These examples of "cause" include:

> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
>
> (B) gross mismanagement of the estate;
>
> (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;
>
> (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;
>
> (E) failure to comply with an order of the court;
>
> (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
>
> (G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;
>
> (H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);
>
> (I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;
>
> (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;
>
> (K) failure to pay any fees or charges required under chapter 123 of title 28;
>
> (L) revocation of an order of confirmation under section 1144;
>
> (M) inability to effectuate substantial consummation of a confirmed plan;
>
> (N) material default by the debtor with respect to a confirmed plan;
>
> (O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and
>
> (P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

11 U.S.C. §1112(b)(4). However, this list is not exhaustive and the Court may find that cause exists for dismissal under the particular facts of any case. The Court may consider other factors as they arise and "may use its equitable powers to reach an appropriate result in individual cases." S.Rep. No. 989, 95th Cong., 2d Sess. 117. See In re Gonic Realty Trust (1st. Cir. 1990) 909 F.2d 624, 626 [Section 1112(b) is not an exhaustive list, and the court is not limited to the enumerated grounds in making its determination of 'cause'].

In these cases, there is cause to dismiss due to substantial ongoing losses, the ongoing diminution of the estates and the absence of a reasonable likelihood of rehabilitation. The bankruptcy estates are administratively insolvent and that situation will not be alleviated by either attempting to propose a plan of liquidation or converting to chapter 7. Rather, either effort would result in an increase in administrative claims since proposing a chapter 11 plan and disclosure statement requires considerable time on the part of bankruptcy counsel. If the cases were converted to chapter 7, a bankruptcy trustee would be appointed and an additional layer of administrative expenses of that trustee and trustee's professionals would be of higher priority than the existing administrative expenses. For these reasons, the bankruptcy cases should be dismissed.

### C. CAUSE EXISTS TO DISMISS THESE CHAPTER 11 CASES.

These bankruptcy cases were precipitated by the Debtors' operational losses and default under their secured loans with AvidBank and inability to continue to operate without additional working capital through the AvidBank loan facility. Following the sale of assets and the Settlement negotiated between the Debtors and AvidBank and with AvidBank now having relief from the automatic stay to exercise all of its rights to the remaining limited collateral, there is no longer a reason for the Debtors to remain in chapter 11. The Creditors' Committee in the Clement case has been actively involved in all aspects of the cases and also supports dismissal as being in the best interest of creditors. Should there be equity to be realized through the sale of the Campbell Property, the Fifth DOT and Sixth DOT have been recorded to provide for

recovery to administrative and unsecured creditors respectively and a dedicated fund is available pursuant to the terms of the sale order to pay unsecured creditors on a pro-rata basis in the Clement bankruptcy case. In addition, the further cost of administering these cases is simply unjustified. The Debtors remaining in bankruptcy would only accomplish the incurring of substantial legal and other administrative fees and ultimately would not increase the payment to creditors.

Several cases have discussed granting a motion to voluntarily dismiss brought by a chapter 11 debtor. For example, <u>In re Mechanical Maintenance, Inc.</u> (E.D. Pa. 1991) 128 B.R. 382, the debtor sought to voluntarily dismiss a corporate chapter 11 case for "cause". The debtor had previously filed a voluntary chapter 11 petition due to financial difficulties. Although the debtor remained in operation for several months after the petition was filed, its operations had ultimately ceased and all of its assets were subject to the claims of a secured creditor. The Court noted that as a threshold matter, it must determine whether "cause" exists within the meaning of the statute. If the motion is opposed, the moving party bears the burden of proof on the issue of cause, even if the motion is a debtor's voluntary motion. <u>In re Sullivan</u> (Bkrtcy. E.D.Pa. 1989) 108 B.R. 555, 557. Once cause is found to exist, the decision whether to convert to chapter 7 or to dismiss is in the discretion of the Bankruptcy Court. The choice of conversion or dismissal must be based on the "best interest of creditors test." In <u>Mechanical Maintenance</u>, the bankruptcy court had failed to consider possible superpriority claims that a certain union claimant alleged to hold in evaluating whether dismissal was in the best interest of creditors and therefore the case had to be remanded to consider those arguments as part of the motion to dismiss. <u>In re GPA Technical Consultants Inc.</u> (Bkrtcy. S.D. Ohio 1989) 106 B.R. 139, 144, the court considered whether creditors might fare better if a case remained in bankruptcy due to potential avoidance actions. [In this case, however, there are no avoidance actions to be preserved and creditors therefore are not prejudiced by the potential loss of avoidance powers upon dismissal of the case.]

Case: 15-50794   Doc# 222   Filed: 12/07/15   Entered: 12/07/15 18:03:09   Page 13 of 16

Other courts have held that a debtor's motion to dismiss should be granted unless some "plain legal prejudice to creditors" would result. In <u>In re Kimble</u> (Bkrtcy. D. Mont. 1988) 96 B.R. 305, the debtor had remained in chapter 11 for some time during which substantial motions had been brought and claims settled. That debtor had proposed a plan and disclosure statement, and amendments to those pleadings had been filed with the court. The unsecured creditors committee had brought a motion to convert and in response the debtor brought a motion to dismiss his case on the grounds that he was unable to effectuate a Plan and liquidation by a trustee would not be in the best interests of the debtor. The court discussed a significant body of case law and ultimately reiterated that the long accepted criteria is such that the debtor's request should ordinarily be granted even in the face of opposition unless some "plain legal prejudice" will result to the creditors. <u>In re Kimble</u>, 96 B.R. at 308. The court then reviewed the evidence, noting that no post-petition transfers were alleged, no preferences were cited and no loss to the estate from the debtor's actions had been proven. The court concluded that there was no showing that dismissal of the case would prejudice creditors and granted the debtor's motion to dismiss his chapter 11 case.

In these cases, the Creditors' Committee has already determined that dismissal is in the best interest of creditors and supports this motion to dismiss.

### D. DISMISSAL IS IN THE BEST INTEREST OF CREDITORS.

The Debtors and their creditors currently face three options as to the future of these bankruptcy cases. One option is to continue to prosecute the bankruptcy cases and propose a chapter 11 plan. Preparation of a plan and required disclosure statement would require the Debtors to incur additional, significant professional fees with no ability to pay for such services. This option is not viable because the Debtors are not able to pay all administrative claims (including the claims of professionals) on the effective date of a plan of reorganization, which is a requirement for confirmation of a chapter 11 plan. Accordingly, there are significant obstacles

to the Debtors remaining in chapter 11. In contrast, there is sufficient cause for the Court to utilize its discretion to dismiss this chapter 11 case.

A second option would be to convert the cases to chapter 7 and appoint a trustee. The problem presented by this option is three-fold. First, a chapter 7 case creates another level of administrative claims that get paid ahead of existing administrative creditors and unsecured creditors, namely that of the chapter 7 trustee and trustee's professionals (a chapter 7 trustee would likely need to employ counsel and an accountant in these cases). Second, there are few, if any, assets remaining for a chapter 7 trustee to administer. The Debtors' hard assets were sold as part of the Court approved sale. The remaining assets are accounts receivables which are the collateral of AvidBank who has been granted relief from stay to pursue liquidation of its collateral. Third, the proceeds generated for Unsecured Creditors from the Settlement would be further diluted by the claims of the chapter 7 trustee and trustee's professionals before payment can be made to chapter 11 administrative creditors and then to priority tax creditors. General unsecured non-priority creditors would therefore be unlikely to see any dividend in a chapter 7 case. For these reasons, the Debtors do not believe that conversion to chapter 7 is in the best interest of creditors.

A third option available is to dismiss these bankruptcy cases. In the event of a dismissal, the Fifth and Sixth Deeds of Trust granted pursuant to the Settlement remain in place and serve to benefit creditors should the Campbell Property sell for sufficient proceeds to reach those junior liens. The funds that have already been carved out for Unsecured Creditors can be quickly disbursed without further delay. Perhaps most importantly, there is no plain legal prejudice to creditors that will result from the dismissal of the cases. Secured and unsecured claimants, as well as tax authorities, will be entitled to utilize the full panoply of remedies that are available to them only outside of bankruptcy, including workout agreements. There are no potential avoidance actions that only exist under the Bankruptcy Code that might benefit unsecured

creditors that will be lost as a result of dismissal. Accordingly, the Debtors believe that dismissal of these bankruptcy cases is in the best interest of creditors.

### III.     PRAYER

Wherefore, the Debtors pray that the Court dismiss these bankruptcy cases and for such other and further relief as the Court deems just and proper.

Date: December 7, 2015                              BINDER & MALTER, LLP

By: /s/ Julie H. Rome-Banks
    Julie H. Rome-Banks
Attorneys for Debtor-in-Possession
Clement Support Services, Inc.

Date: December 7, 2015                              LAW OFFICES OF JON G. BROOKS

By: /s/  Jon G. Brooks
    Jon G. Brooks
Attorneys for Debtor-in-Possession
CSS Fabrication, Inc.